IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID T. BURKETT,

    Plaintiff,

v.

WASHINGTON COUNTY DETENTION
CENTER and OFFICER CARTY,

    Defendants.

Civil Action No.: BAH-24-594

## MEMORANDUM OPINION

David T. Burkett, a self-represented plaintiff and prisoner now confined at Jessup Correctional Institution ("JCI"), filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983. ECF 1. Defendants Washington County Detention Center ("WCDC") and Officer Brady W. Carty[1] moved to dismiss the complaint, or in the alternative for summary judgment (ECF 9), supported by a memorandum (ECF 9-1) (collectively, the "Motion"), along with supporting exhibits. *See* ECFs 9-2, 9-3. Burkett was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right to respond to the Motion, and that his failure to file a response in opposition to Defendants' Motion could result in dismissal of the complaint. ECF 10. Burkett responded in opposition, ECF 14, and the Defendants replied, ECF 16.

All pleadings have been thoroughly reviewed by the Court and a hearing is unnecessary in this matter. *See* Local Rule 105.6 (D. Md. 2023). For reasons that follow, the Defendants' Motion is granted due to Burkett's failure to exhaust his administrative remedies.

---

[1] The Clerk will be directed to update the docket to reflect Officer Carty's full and correct name.

I.  Background

In his complaint, which was received by the Court on February 26, 2024, Burkett alleges that on February 9, 2024, while he was then housed at the WCDC, correctional officers conducted a cell search "shakedown" of "E-pod," where Burkett was housed. ECF 1, at 1. Burkett's cell door was opened to be searched, and Defendant Officer Carty instructed his cellmate to exit while telling Burkett to remain inside the cell. *Id.* Burkett alleges that after his cellmate exited the cell, Carty instructed Burkett to "strip fully naked." *Id.* at 2. Burkett alleges that his cell was in an area that was visible from other high-traffic areas, such as the "rec hall and sallyport," and Burkett notes that other people were present outside his cell when he was ordered to remove his clothing. *Id.* at 2–3. Burkett informed Carty that he "did not feel comfortable with being naked with so many people being able to see [him]." *Id.* at 3. Carty allegedly responded that "he didn't care," and told Burkett that he could either "strip now or go to lock up." *Id.* Burkett again expressed his discomfort, to which Burkett alleges that Carty aggressively responded by stating, "Burkett, nobody is looking up here, you're pissing me off, if you don't hand me your clothes you're going to lock up." *Id.* In an attempt to "calm the situation," Burkett alleges that Officer Webb, another correctional officer present at the time of the incident, remarked to Burkett, "[y]ou're good, nobody is looking at you." *Id.* at 4. Despite his discomfort, Burkett complied with Carty's directive and removed his clothing "so [he] would not be punished." *Id.* Burkett notes that Carty's actions do not comply with WCDC policy regarding cell searches or strip searches. *Id.* at 1–2.

Burkett states that he contacted "P.R.E.A."[2] on February 12, 2024, shortly after the incident, but had not heard back as of the filing of the instant complaint. *Id.* at 4. He states that he has "bypassed the in-house grievance process because it lacks the fundamental principles of the process. It's designed to be a months long process with no paper trail that stays in house with the accused colleagues making the decision." *Id.* He states that he fears retaliation and asks to "be kept away from Carty or moved to a different facility". *Id.* at 5–6. He seeks $1,500,000.00 in damages "for mental anguish and cruel and unusual punishment." *Id.* at 5. He also asks the Court to "suspend Officer Carty . . . so he can be taught the proper procedures for his job and take the P.R.E.A. classes so no other inmates have to experience what [he's] had to experience." *Id.*

In response to Burkett's complaint, Defendants filed a motion to dismiss, or in the alternative, for summary judgment. ECF 9. Therein, they argue that 1) Burkett failed to exhaust his administrative remedies; 2) he has failed to sufficiently plead a claim; 3) he has failed to plead sufficient personal participation by any defendant; 3) defendants are entitled to qualified immunity; and 4) any claims against Carty in his official capacity are barred by the Eleventh Amendment. *See* ECF 9-1, at 1–14.

As to their exhaustion argument, Defendants include the WCDC Inmate Handbook, which provides the applicable grievance procedure. ECF 9-2, at 56. They note that Burkett was provided a copy of the handbook upon arrival to WCDC, and they point out that Burkett references the handbook many times throughout his complaint. ECF 9-1, at 6. Additionally,

---

[2] The Court understands that Burkett is referring to organizations designed to protect inmates from unwanted sexual conduct pursuant to the Prison Rape Elimination Act ("PREA"). "Congress enacted PREA with the purpose of implementing standards and policies to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Doe v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (quoting 34 U.S.C. § 30302).

they include copies of grievances Burkett filed about other matters. ECF 9-3, at 1–12. They argue that Burkett understood the grievance process because he has previously "used this process to address his concerns of a HIPAA violation and allegations that the kitchen was serving cold trays." ECF 9-1, at 3. They further note that Burkett acknowledges on the face of his complaint that he chose to "bypass" the grievance process by filing this lawsuit, and thus allege that his claims are unexhausted and must be dismissed. *Id.* at 9.

Burkett's one page response does not address the Defendants' exhaustion argument. ECF 14, at 1. Rather, he simply states that he "seeks to use camera footage and statements from Officer Webb" and "inmate Timothy McKenzie." *Id.* Burkett does not clarify how this evidence will assist his case, or more to the point, how the proffered evidence will address the allegation that he failed to exhaust his administrative remedies. He also opaquely requests the assistance of counsel.[3] *Id.*

Because Burkett has not exhausted his administrative remedies, there is no need to discuss the remainder of Defendants' arguments or proffered evidence. For the reasons

---

[3] To the extent Burkett intended this to be a motion for the appointment of counsel, it is denied. Under 28 U.S.C. § 1915(e)(1), the Court has discretion to appoint counsel for indigent civil litigants in exceptional circumstances. *See Bailey-El v. Hous. Auth. of Balt. City*, 185 F. Supp. 3d 661, 670 (D. Md. 2016) (citing *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), *aff'd in part, vacated on other grounds,* 686 F. App'x 228 (4th Cir. 2017). Whether exceptional circumstances exist is a fact-specific determination. *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024) (quoting *Whisenant*, 739 at 162). Here, Burkett has not put forth any exceptional circumstances which might justify the appointment of counsel. And, perhaps most compellingly, this case must be dismissed under the Prison Litigation Reform Act due to Burkett's failure to exhaust administrative remedies. Thus, to the extent Burkett intended this filing to include a motion for the appointment of counsel, it is denied.

4

articulated below, Defendants are entitled to dismissal due to Burkett's failure to exhaust his claims.

## II.   Standard of Review

In reviewing a complaint in response to a motion made pursuant to Fed. R. Civ. Proc. 12(b)(6), the Court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to Burkett. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

However, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, a complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "But where the well-pleaded facts do not permit the court to infer

5

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Although Defendants have submitted exhibits with their motion, when deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any documents attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment if matters outside the pleadings are considered and not excluded. *See* Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, the trial court must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' motion, which clearly announces that it seeks summary judgment.[4] ECF 9, at 1. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot

---

[4] It also bears noting that the consideration of documents beyond the complaint does not transform every motion to dismiss into one seeking summary judgment. The Court may also consider "documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Though there does not appear to be a dispute over the authenticity of the exhaustion-related documents attached to Defendants' motion, no argument has been made that the documents related to exhaustion are integral to the complaint.

6

present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Burkett has not done so here.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . .. the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

Defendants assert in their motion that Burkett failed to exhaust the grievance process and has also failed to state a claim for relief. ECF 9, at 1. The motion includes two exhibits that relate

7

specifically to Burkett's efforts to exhaust the grievance process. *See* ECFs 9-2, 9-3. Because the Court considers these exhibits, the motion will be construed as a motion for summary judgment as to the question of exhaustion.

## III. Discussion

The Defendants assert that the complaint should be dismissed because Burkett failed to exhaust the grievance process as to the claims in the complaint. ECF 9-1, at 8–9. If Burkett's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. See *Johnson v. Robinette*, 105 F.4th 99, 108 (4th Cir. 2024) ("The [PLRA] generally requires prisoners to exhaust all 'available' administrative remedies before filing an action challenging the conditions of their confinement." (citing 42 U.S.C. § 1997e(a)).

The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

8

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). In other words, and in the context of grievances related to the PREA, Burkett "was required to exhaust his PREA claims for sexual harassment and sexual

9

abuse only if the [relevant] grievance procedures for such claims were available for him to exhaust." *Johnson*, 105 F.4th at 108 (citing *Ross*, 578 U.S. at 636).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Here, the Defendants provide—and Burkett does not dispute the authenticity of—the grievance procedure available at WCDC, which provides:

> If you have a complaint that cannot be resolved informally with staff, you may access the Inmate Grievance Procedure. To access the Inmate Grievance Procedure, send an Inmate Request Form to Classification stating why you need

10

> to receive a Grievance Form. When you receive the form, you will be advised as to which Captain you should forward it to.
>
> A Captain may assign another appropriate staff member to investigate and respond to your Grievance or he may respond himself. You should receive a written response within (15) working days (weekends and holidays are not counted) of the date your Grievance Form was received by the Captain.
>
> If you are not satisfied with the outcome, you have (7) days to send a written appeal to the Warden. No special form is needed. State your reasons for disagreeing with the outcome. State what you want done. The Warden will notify you of his decision in writing within (15) working days (weekends and holidays are not counted) from the date he receives your appeal. Abuse of the Inmate Grievance Procedure may result in disciplinary action being taken against you.

ECF 9-2, at 56. Defendants argue that all of Burkett's claims are unexhausted, requiring dismissal. The Court agrees. Burkett alleges that this incident occurred on February 9, 2024. ECF 1. His complaint is not dated, but it was received by the Court for filing only seventeen (17) days later, on February 26, 2024. Given the WCDC grievance procedures and applicable response timelines outlined above, it is impossible that Burkett completed the process, which allow for fifteen (15) days for a Captain's response, seven days to appeal to the Warden, and fifteen (15) days for the Warden to respond. ECF 9-2, at 56. Burkett concedes as much in frankly acknowledging that he purposefully "bypassed the in-house grievance process" and proceeded straight to filing suit. ECF 1, at 4.

It bears noting that his allegation is, at its core, one alleging sexual misconduct and invoking the protections of the PREA. In *Johnson*, the Fourth Circuit noted that the Maryland Department of Public Safety and Corrections, "elected to [] exempt 'sexual misconduct' claims against a prison official from its [grievance] process." 105 F.4th at 109. There is no evidence that Burkett's place of confinement—WCDC—exempts accusations of sexual abuse from its traditional grievance process. *Id.* at 108 ("Prisons 'that exempt sexual abuse allegations from their remedial schemes are exempt from this standard, because their inmates may proceed directly to

11

court.'" (citations omitted)); *id.* at 109 (citing the DPSCS's grievance policy and noting that it "does not permit the use of an informal resolution process or [grievance] to resolve complaints of rape, sexual assault, sexual harassment, sexual abuse[,] sexual misconduct, inmate on inmate sexual conduct, or other areas afforded protections by standards established under the authority of the [PREA] and related Department procedures." (some alterations in original)).[5]

Burkett alleges that he avoided the grievance process because "it lacks the fundamental principles of the process" and "is designed to be a months long process with no paper trail that stays in house with accused colleagues making the decision." ECF 1, at 4. While it is often the case that an in-house grievance process appears to go nowhere, at least from the perspective of the person filing the grievance, this Court is not permitted to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*,

---

[5] PREA standards do not permit a prison or jail to "require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse." 28 C.F.R. § 115.52(b)(3). WCDC's administrative grievance procedure does appear to endorse an informal resolution of grievances. ECF 9-2, at 56 ("If you have a complaint that cannot be resolved informally with staff, you may access the Inmate Grievance Procedure."). Moreover, a jail or prison "shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse." 28 C.F.R. § 115.52(b)(1). No party has raised the question of whether this preamble to the grievance procedure requires the use of informal channels to resolve allegations of sexual misconduct at the facility, just as no party has argued that WCDC requires the filing of such a grievance within a time limit. As such, the Court will not address these questions either. However, the Court notes that the "Inmate Grievance Procedure" does not appear to include any time limitations for the filing of any grievance. ECF 9-2, at 56. Further, Defendants do not argue that Plaintiff was required to pursue an *informal* resolution of his grievance; rather, Defendants allege that Plaintiff began the process of alleging a PREA grievance but voluntarily abandoned it. ECF 9-1, at 6 ("Here, Plaintiff claims he made a report with PREA, an agency established by Washington County Sheriff's Office to oversee efforts to comply with the PREA standards in all of its lockups and detention facilities. Plaintiff filed his report on February 12, 2024, and then filed this Complaint two weeks later as he did 'not hear anything back yet.'") (quoting ECF 1, at 4)). Putting aside the fact that "PREA complaints are not prison grievances for purposes of satisfying the administrative remedies requirement under the PLRA," *Barringer v. Stanley*, No. 5:16-CV-17-FDW, 2017 WL 1028595, at *3 (W.D.N.C. Mar. 16, 2017), Plaintiff admits that he affirmatively chose not to participate in the formalized WCDC grievance process even thought it was clearly available to him, *see* ECF 1, at 4.

12

532 U.S. 731, 741 n.6 (2001). Further, beyond conclusory statements, Plaintiff has failed to show that WCDC's "administrative procedure is unavailable"—meaning that, "despite what [its] regulations or guidance materials may promise[,] it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643.

Burkett has provided no basis for the Court to find that the grievance process can be bypassed in this case. As his claims are unexhausted, this Court cannot consider them, and the complaint must be dismissed without prejudice.

**IV.   Conclusion**

For the foregoing reasons, I shall grant the Defendants' Motion (ECF 9), and the complaint is dismissed without prejudice.

A separate implementing order follows.

November 22, 2024  
Date

/s/  
Brendan A. Hurson  
United States District Judge